UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                               Case No. 16-cr-20387

v.                                             Honorable Thomas L. Ludington

TALMADGE DERRELL BARNES,

        Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND SETTING SCHEDULING ORDER DATES**

On May 25, 2016, Defendant Talmadge Derrell Barnes was indicted on one count of being a felon in possession of ammunition. ECF No. 1. The indictment included a forfeiture allegation. Attorney, Jeffrey J. Rupp, was appointed on the same day to represent Barnes. ECF No. 3–4. On June 22, 2016, a superseding indictment was issued which contained the two original counts and added a count charging Barnes with being a felon in possession of a firearm. ECF No. 16. On August 30, 2016, Mr. Rupp filed a motion to withdraw as Barnes's attorney and Barton W. Morris, Jr., entered an appearance on Barnes's behalf. ECF Nos. 24, 25. The Court held a hearing on Barnes's motion for the withdrawal of his appointed attorney on September 22, 2016. Based on Mr. Morris's in-court representations and an affidavit filed after the hearing, the Court granted the motion for withdrawal and allowed Mr. Morris to substitute for Mr. Rupp. ECF No. 31. A second superseding indictment was issued on September 14, 2016, which added two additional counts: possession of crack cocaine and possession of marijuana. ECF No. 29.

On October 24, 2016, Barnes filed a motion to suppress evidence. ECF No. 36. In the motion, Barnes argues that his car was unconstitutionally searched and that evidence found as a result of that search should be suppressed. On January 4, 2017, an evidentiary hearing on the motion to suppress was conducted. For the reasons stated below, Barnes's motion to suppress will be denied.

I.

The arresting officers testified at the suppression hearing. Michigan State Police Trooper Adam Whited testified that the vehicle was initially stopped for failure to utilize a turn signal and because an object had been thrown from the passenger window after the stop was initiated. Hearing Tr. at 7, ECF No. 40. When Trooper Whited began talking with the vehicle's driver, Barnes, he noticed a "tied off corner bagging sitting right between his legs." *Id.* at 8. Because tied-off baggies are "a common way for narcotics to be packaged and transported, Trooper Whited asked Barnes if there were illegal substances in the car. *Id.* When Trooper Whited specifically referenced the plastic baggie, Barnes concealed the item underneath himself. *Id.* At this point, Trooper Whited directed Barnes to exit the vehicle. *Id.* at 9. Barnes hesitated. Trooper Whited then opened the door and gave multiple verbal commands to exit. *Id.* Because Barnes remained noncompliant, Trooper Whited grabbed Barnes's wrists and arms to "prevent him from destroying any evidence or trying to reach for anything in the vehicle." *Id.* Barnes eventually stepped out of the vehicle, but continued trying to pull away from Trooper Whited. *Id.* Trooper Whited's partner, Trooper Kemerer, assisted Trooper Whited in handcuffing Barnes. *Id.* In total, Barnes took several minutes to exit the vehicle.

After Barnes was handcuffed, Trooper Whited searched his person, finding a Ziploc bag. *Id.* at 11. Trooper Kemerer then examined the tied-off plastic baggie, but did not open it. *Id.* at

20. Trooper Kemerer testified that he "immediately recognized the substance inside as suspected marijuana" from the feel of the baggie. *Id.* at 28. The officers then searched the vehicle, finding more illegal drugs and firearms. *Id.* at 11–12.

## II.

In general, warrantless searches and seizures presumptively violate the Fourth Amendment. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. const. amend IV.

However, several exceptions to the warrant requirement exist, including an exception for searches incident to a lawful arrest. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). The rationale for the exception is derived from the interest in protecting officers and preserving evidence. *Id.*

The Supreme Court has delineated two bases on which officers can search a vehicle incident to a lawful arrest. First, if the "arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search," police can search the vehicle. *Id.* at 343. This exception is meant to ensure that the arrestee cannot destroy evidence or obtain weapons. Second, if it is "'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle,'" then the vehicle can be searched even if the arrestee has been safely secured and is not within reaching distance of the vehicle's passenger compartment. *Id.* at 343–44 (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring)).

## III.

Barnes argues that the troopers did not have probable cause to arrest him and thus that the search of the vehicle was not incident to a lawful arrest. In response, the Government asserts that the motion to suppress should be denied on multiple separate grounds.

### A.

First, the Government argues that Barnes lacks standing to challenge the search. Barnes bears the burden of demonstrating standing to challenge the search, which requires that he show that he possessed a "legitimate expectation of privacy" in the area searched. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980) (citing *Katz v. United States*, 389 U.S. 347 (1967)).

The Government argues that the following factors are relevant to whether Barnes has standing to object to the search of the vehicle: whether Barnes asserts ownership over the items seized, whether Barnes testified to his expectation of privacy at the suppression hearing, and whether Barnes presented testimony at the evidentiary hearing indicating that he had a legitimate possessory interest in the vehicle. *See United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000). Being present in the vehicle, possessing the car keys, or even driving the vehicle are not necessarily sufficient to establish standing. *Id.*[1]

However, the Sixth Circuit has held that a defendant can have standing to challenge evidence seized pursuant to a stop and detention even if the defendant would not otherwise have standing to challenge the vehicle search. *See United States v. Torres-Ramos*, 536 F.3d 542, 549 (6th Cir. 2008). Because all occupants of a vehicle are seized during a traffic stop, the driver and passengers of the vehicle have standing to challenge the stop and detention even if they do not have a reasonable expectation of privacy in the vehicle itself. *See id.* at 549 n.5 (citing *Brendlin v. California*, 551 U.S. 249, 263 (2007)). Barnes argues that there was no probable cause to

---

[1] At the suppression hearing, both parties presented testimony regarding the ownership of the car. Because not ultimately relevant to resolution of the legal issue, that testimony will not be recounted. Suffice to say, the identity of the true owner of the car is an interesting if not hotly contested issue.

- 5 -

effectuate his arrest. Barnes further argues that the search of the vehicle was subsequent to and predicated upon Barnes's arrest, meaning all evidence seized from the vehicle is fruit of Barnes's seizure. If true, and if Barnes's arrest was unlawful, then the evidence seized from the car is fruit of illegal activity and will be suppressed. Accordingly, Barnes need not demonstrate that he had a legitimate expectation of privacy in the vehicle to establish standing to argue that the evidence should be suppressed.

**B.**

The primary issue, then, is whether the troopers had probable cause to arrest Barnes. Barnes does not argue that the initial traffic stop was unlawful. Rather, Barnes argues that his arrest was unlawful, making the search of the vehicle unconstitutional. For an arrest to be lawful, the officers must have probable cause to believe that the arrestee had committed or was committing an offense. *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964). Probable cause means that the officer must have "'reasonably trustworthy information'" at the time of the arrest that would warrant a "'prudent man in believing'" that the suspect had committed an offense. *Peet v. City of Detroit*, 502 F.3d 557, 563–64 (6th Cir. 2007) (quoting *Beck*, 379 U.S. at 91). "[P]robable cause is a flexible, common-sense standard." *Texas v. Brown*, 460 U.S. 730, 742 (1983). The standard does not require "any showing that [the belief that illegal activity occurred] be correct or more likely true that false." *Id.* Probable cause merely requires "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Further, probable cause exists "if a 'succession of superficially innocent events ha[s] proceeded to the point where a prudent man could say to himself that an innocent course of conduct was substantially less likely than a criminal one.'"

*United States v. Alfano*, 838 F.2d 158, 16–632 (6th Cir. 1988) (quoting *United States v. Martin*, 509 F.2d 1211, 1213 (9th Cir. 1975)).

Barnes argues that the troopers lacked probable cause for the arrest. Barnes emphasizes that because the plastic baggie was not opened until after the arrest, the baggie could not have formed the basis for the arrest. But this rationale ignores the other bases for probable cause. The testimony at the evidentiary hearing established that an individual in the car threw an unknown object out the window after the police car appeared behind the car. Likewise, when asked about the plastic baggie observed by the officer in plain sight, Barnes attempted to hide the bag. Suspicious or evasive actions can contribute to the existence of probable cause. *See United States v. Hughes*, 898 F.2d 63, 64 (6th Cir. 1990). *See also United States v. McCraney*, 674 F.3d 614, 621 (6th Cir. 2012) ("[S]uspicious movements made in response to police presence may properly contribute to an officer's suspicions."); *United States v. Graham*, 483 F.3d 431, 439 (6th Cir. 2007) (finding that the defendant's "furtive movement" was consistent with an attempt to conceal a firearm and thus contributed to the finding of reasonable suspicion); *United States v. Caruthers*, 458 F.3d 459, 466 (6th Cir. 2006) ("Furtive movements made in response to a police presence may also properly contribute to an officer's suspicions.").

Besides the apparent efforts to hide suspicious objects, Barnes also refused to exit the vehicle when ordered to do so. When a vehicle has been lawfully detained, the officer may order the driver to exit the vehicle without violating the Fourth Amendment. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977). Barnes's refusal to comply with a lawful order by the troopers is an additional factor supporting the conclusion that probable cause to arrest existed.

At the evidentiary hearing, the troopers testified that suspects in possession of illegal drugs will often throw the incriminating evidence out of the window when pursued by police.

They further testified that illegal drugs are commonly stored and transported in plastic baggies with a corner tied off. Finally, Trooper Kemerer testified that, after Barnes had exited the vehicle, Trooper Kemerer reached into the car and squeezed the plastic baggie. Inside, Trooper Kemerer felt a plant-like material, which he immediately recognized as marijuana.[2]

To summarize, when the troopers attempted to pull over the vehicle, one of the occupants threw an object out the window. Once the vehicle was pulled over, the officers spotted a baggie of the sort typically used to transport illicit drugs. When Barnes was questioned about the baggie, he attempted to hide it. When lawfully ordered to step outside the vehicle, Barnes resisted for several minutes. After the officers ejected Barnes from the car, one trooper squeezed the bag and felt a plant-like substance that was, in his opinion, consistent with marijuana. Any one of these events could be considered innocent in isolation. However, when viewed together, the totality of circumstances established that "'an innocent course of conduct was substantially less likely than a criminal one.'" *Alfano*, 838 F.2d at 16–632 (quoting *Martin*, 509 F.2d at 1213).

These facts are similar to those in *United States v. Montgomery*, 377 F.3d 582, 591 (6th Cir. 2004), where the Sixth Circuit found that there was probable cause to arrest the defendant. In *Montgomery*, the defendant was a passenger in a car stopped for a speeding violation. *Id.* at 584. During the stop, an officer noticed "a stem, approximately one-inch long, on the driver's floorboard near the center console." *Id.* The observing officer was confident, based on her

---

[2] It is unclear whether Barnes is arguing that Trooper Kemerer violated Barnes's Fourth Amendment rights by squeezing the bag. And even if he is, that action would be lawful. When Trooper Kemerer grabbed the baggie, Barnes was still within arms-length of the baggie. Barnes was handcuffed before the baggie was manipulated, but the use of handcuffs does not "exceed the bounds of a Terry stop," providing the circumstances warrant the use of handcuffs. *Houston v. Clark Cty. Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir. 1999). Here, Barnes's resistance to the officers made the use of handcuffs a reasonable precaution. The officers clearly had grounds for reasonable suspicion that Barnes was in possession of illegal substances. Thus, the baggie was lawfully seized and manipulated during a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968); *Michigan v. Long*, 463 U.S. 1032, 1052 (1983). If a police officer lawfully obtains an object "whose contour or mass makes its identity immediately apparent, . . . its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Minnesota v. Dickerson*, 508 U.S. 366, 376 (1993). Because the trooper could arguably have seized the baggie without a warrant based simply on its feel, the trooper could clearly consider the incriminating feel of the baggie as supporting a finding of probable cause to arrest Barnes.

"training in and experience with the detection of narcotics," that the stem was from a marijuana plant. *Id.* The officers then informed the passengers that the car would be searched. *Id.* At that moment, one passenger shoved a "blue object underneath the back seat's armrest." *Id.* The Sixth Circuit held that, based on the "nervousness of all the occupants, the marijuana stem in plain view, [two passengers'] attempts to conceal the marijuana stem and an unknown objection, . . . it was reasonable" to pat down the defendant for weapons after he exited. *Id.* at 586. The Sixth Circuit also noted that the district court had held that defendant was lawfully arrested based only on the evidence summarized above (and not further evidence of drug possession uncovered during a search of the vehicle). *Id.* at 585. The Sixth Circuit explained that the defendant might have been subject to a mere investigative detention and not a full custodial arrest, but concluded that the search of the defendant's person was justified in either scenario.

Like in *Montgomery*, there was evidence of drug possession here (a plastic baggie of a kind that the troopers knew often contained drugs and which felt like it contained marijuana), attempts to conceal or dispose of suspicious objects, and nervous behavior by the vehicle occupants. There were sufficient indications of illegal drug possession to create probable cause to arrest Barnes.[3] More importantly, it was "reasonable" for the officers "to believe the vehicle contain[ed] evidence of the offense of arrest," meaning the search of the vehicle was lawful. *Gant*, 556 U.S. at 346. Accordingly, Barnes was lawfully arrested, and the searches of Barnes's person, the car, and the plastic baggie were constitutional because they were conducted incident to a lawful arrest.[4]

---

[3] Alternatively, the testimony at the evidentiary hearing established that Barnes resisted arrest. Thus, Barnes could have been arrested on that basis as well.

[4] Even if there was not sufficient evidence to create probable cause to arrest Barnes specifically, there was sufficient evidence to create probable cause to believe that the vehicle contained evidence of criminal activity. Pursuant to the automobile exception to the warrant requirement, police can search a vehicle if there is probable cause to believe the vehicle contains evidence of illegal activity. *See United States v. Ross*, 456 U.S. 798, 825 (1982). Probable cause to

## IV.

Accordingly, it is **ORDERED** that Defendant Barnes's motion to suppress, ECF No. 36, is **DENIED.**

It is further **ORDERED** that the Scheduling Order is **AMENDED as follows:**

Plea Cut Off:	**January 31, 2017**

Final Pretrial Conference:	**January 31, 2017, at 2:00 p.m.**

Trial:	**February 14, 2017, at 8:30 a.m.**

Dated: January 23, 2017	s/Thomas L. Ludington
	THOMAS L. LUDINGTON
	United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 23, 2017.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager

---

search the car existed independent of the search of Barnes's person, meaning that even if Barnes's arrest was unlawful, the evidence found in the vehicle would not be suppressed.